YOUNG, *by Guardian, Appellant*, v. DOWNEY *et al.*

Division Two, June 28, 1898.

1. **Administration:** SALE OF LAND FOR DEBTS INVALID: FOR LACK OF NOTICE.  Where the law requires that a notice of the application for the sale of real estate to pay decedent's debts, shall be published for four weeks, and it affirmatively appears from the records of the court wherein the sale was made that the notice was published for only twenty-four days, the sale will be held invalid.  In this case the order for the notice was made September 4, and the first publication was on September 8, the second on the fifteenth, the third on the twenty-second, and the fourth on the twenty-ninth, and "notified all persons interested" to appear on the second day of October, the first day of the term. *Held*, that the notice was published for only twenty-four days, whereas the law required that it be for twenty-eight days, and that, therefore, the defendant acquired no title by reason of his purchase and deed from the administrator.

2. ———: ———: ———: PRESUMPTION.  Where the purchaser at an administrators' sale shows the order of sale by the proper court, the order approving the sale and the deed in accordance therewith, the presumption will be indulged, until the contrary is shown, that all antecedent steps requisite to a legal sale were taken.  But when

it affirmatively appears from the record that it was impossible that the notice of the sale could have been given for the length of time required by the statute, the sale will be held invalid.

*Appeal from the Platte Circuit Court.*—HON. W. H. RONEY, Special Judge.

REVERSED AND REMANDED.

*James W. Boyd* and *Benjamin Phillip* for appellant.

(1)   In order to confer jurisdiction upon the probate court to make an order of sale of lands for the payment of debts upon the petition of the administrator under section 22, page 489, General Statutes 1865, it was necessary, *first*, that the petition should describe the lands for which an order of sale was asked; *second*, that an order be made notifying the parties interested that an order for the sale of said lands would be made at the next term of court unless reasons be shown on the first day of said term why said order should not be made; *third*, that said notice should contain a description of the lands to be sold, and should be published for four weeks in some newspaper printed in the county. The publication of the notice for the length of time required by law is necessary to confer jurisdiction upon the probate court to make an order of sale.  G. S. 1865, pp. 497–8, secs. 10, 22, 25; *Hutchinson v. Shelley*, 133 Mo. 400; *Cunningham v. Anderson*, 107 Mo. 371; *Sibley v. Waffle*, 16 N. A. 180.   (2)   The records of the probate court, introduced in evidence in this case, show affirmatively upon their face that the first publication of this notice was made upon September 8, 1876, the second September 15, 1876, the third September 22, 1876, and the fourth September 29, 1876. The notice required the persons interested to be and appear in the probate court on or before the first day of the October term, 1876, to show cause why an order

for the sale of the l' ids mentioned in said notice should not be mad( for the payment of the debts of the deceased. The record also shows that the first day of the October term, 1876, of the probate court was October 2, 1876. It will thus be seen that only twenty-four days elapsed between the date of the first publication of said notice and the first day of the October term, 1876, on which day the parties in interest were required to appear in court and show cause, if any they had, why an order for sale of said lands should not be made. The statute required said publication to be made "for four weeks.'" This does not mean four publications, but it means four weeks of seven days each. *Early v. Doe*, 16 How. 610; *State ex rel. v. Tucker*, 32 Mo. App. 620; *Market National Bank v. Pacific National Bank*, 89 N. Y. 397; *In re Hall Township*, 47 Pa. St. 156; *Collins v. Smith*, 57 Wis. 284; *Standford v. Warne*, 27 Cal. 171; *Reed v. Sexton*, 20 Kan. 195. (3) If the notice was not published for the length of time required by law it was equivalent to no notice at all, and if the order of sale was made without any notice it and the sale made in pursuance thereof are void. *Teverbaugh v. Hawkins*, 82 Mo. 180; *Cunningham v. Anderson*, 107 Mo. 371; *Sibley v. Waffle*, 16 N. Y. 180; *Pardon v. Devire*, 23 Ill. 572.

*Jas. W. Coburn* for respondents.

(1) The petition need not describe land. 114 Mo. 486. Neither the order of sale. 91 Mo. 117. (2) Publication once a week for four weeks is a four week's publication. *Cruzen v. Stephens*, 123 Mo. 337; *Haywood v. Russell*, 44 Mo. 252; *Burnes v. Burnes*, 61 Mo. App. 619. (3) Administrator in support of his sale need show only order of sale, approval and deed. *Price v. Springfield*, 101 Mo. 116; 103 Mo. 668.

BURGESS, J.—This is ejectment for the possession of several tracts of land, all alleged to be in the possession of the defendants. The petition is in the usual form. The defendants filed answer, the effect of which was to deny plaintiff's right to recover possession of the land, and to allege the sale and purchase of it by defendant Downey, at administrator's sale, where it was sold for the payment of debts against the estate of William H. Downey, deceased, by order of the probate court of Platte county, Missouri, at which said sale the defendant Downey became the purchaser, paid the purchase price and received a deed therefor.

Plaintiff filed reply denying all new matter set up in the answer, and alleging that all proceedings in the probate court in regard to the sale of the interest of William H. Downey of which defendant Downey became the purchaser were null and void; that defendants had received the rents and profits thereof since the administrator's sale, and asking that an accounting be had, etc.

In 1876, one William H. Downey died intestate, owning an undivided one fourth interest in the land involved in this litigation. The defendant, William Rees, owned an undivided one half of said lands and the defendant John M. Downey the remaining undivided one fourth.

At the time of his death, William H. Downey left surviving him his widow, Angelina Downey, and an infant child, Lewis Downey, his only heir. The defendant, John M. Downey, qualified as administrator of the estate. A few months afterwards at the July term, 1876, of the probate court of Platte county, Missouri, the administrator filed his petition therein, setting forth the fact that the personal property was insufficient to pay the debts of the estate, and praying for an order authorizing him to sell the undivided one fourth interest of his decedent in the land in question.

On the fourth day of September, 1876, the probate court made an order that all persons interested in the estate of William H. Downey, deceased, be notified by publication that unless they appeared on the first day of the next (October) term of said court, the second day of October, 1876, and made it appear to the contrary, an order for the sale of the undivided one fourth interest of the said William H. Downey, deceased, in said lands would be made for the payment of his debts.  Notice was published in the *Western Commercial*, a weekly newspaper, in four issues of that paper, viz:   The first insertion appeared September 8, the second September 15, the third September 22, and the fourth September 29.   The first day of the October term, 1876, of the probate court of Platte county, Missouri, was the second day of October, so that the first publication of said notice was made only twenty-four days before the first day of said October term of said court.

On the first day of October term Angelina Downey, the widow, appeared, and in writing objected to any order being made for the sale of said lands, until her interest in the same should be ascertained and set apart, and her homestead assigned to her; and requested that the court suspend all proceedings upon the petition of the administrator until the land was divided and her homestead assigned to her.   At the time these objections were made, Angelina Downey was not curator of her infant child, Lewis Downey, she being appointed as such seven days later, on the ninth of October, 1876. On the twenty-seventh day of October, and at the October term, 1876, the court sustained the widow's objections, and made an order that all further proceedings in the application of the administrator for the sale of his decedent's land for the payment of his debts be suspended until the further order of the court, and

until the rights of the widow in the real estate were determined.

The widow, on the sixth day of December, 1876, for herself, and as curator for her minor child, brought suit in partition in the probate court (which at that time had jurisdiction in partition) against defendants John Downey and William Rees, praying for division of the land owned by them in common, according to their respective interests.   At the January term, 1877, an interlocutory decree was entered, and at the April term a final decree in partition was made, by which said lands were divided and the lands in controversy in this case were set off to Lewis Downey, as his property; the dower of the widow being assigned to her out of a part of the lands set off to Lewis Downey, and described by metes and bounds as follows, to wit: Beginning at the southeast corner of the southeast quarter of said section 13, thence north with range line to a stone on said range line 12.50 chains north of quarter section corner of section 13, thence west 16.37½ chains to the right of way of the K. C., St. Joe & Council Bluffs Railroad, thence with east line of same to quarter section line running east and west through the center of section 13, thence west with said quarter section line 1.75 chains, to the west side of right of way of said railroad, thence with the west side thereof, south 26½ degrees east, 65 chains to a stone in the center of ditch, thence, south 68½ degrees west, 10.20 chains to a stone in center of said ditch; thence south 35.50 chains to a stone under the bank of Missouri river, thence east (estimating to bank of said river) 21 chains to the beginning, containing 90.50 acres more or less, being 63.25 acres more or less of bottom land and 27.25 acres more or less of bluff or timber land.   The remainder of the land was set off to the defendants jointly.

The widow afterward intermarried with James W. Young. Two children were born of this marriage, one named Myrtle, who died when she was thirteen months old, and Stephen Lee Young, plaintiff in this suit. The widow died in August, 1881. Lewis Downey died in June, 1895, aged twenty, leaving his half brother, the plaintiff, a minor, his sole heir at law, who as such inherited and is the owner of all the lands which were set off in the partition suit to Lewis Downey, unless as is claimed by the defendants, John M. Downey became the owner of said property by virtue of administrator's sale and deed hereinafter to be mentioned.

At the end of the October term, 1876, an order was made continuing the "petition of John M. Downey, administrator, for an order of sale to pay debts" to the January term, 1877, but no order was made at the January term continuing the matter over to the next (April) term, or any other term. The partition of the lands having been accomplished at the April term, 1877, on April 5, the administrator appeared in the probate court on the following day, April 6, and on his motion the court made an order of sale which culminated in the deed to defendant Downey. This order was made upon the original petition asking for a sale of Downey's undivided one fourth interest in all of the lands formerly owned in common, and without any new petition or notice other than that which had been published for twenty-four days prior to the October term, 1876, in which it was recited that the application for an order would be made at that term for the sale of Wm. H. Downey's undivided one fourth interest in all of the lands then owned in common. The order of sale was not for the undivided one fourth interest of Wm. H. Downey, deceased, in the lands described in the petition or the notice published, but for the entire interest in all the lands which had been

set off to Lewis Downey in the partition suit, excepting the ninety acres which had been assigned to the widow as her dower. These ninety acres were not included in the order. The administrator was instructed to sell at private sale. Three days later, without any notice of any kind, the court, upon the administrator's motion, entered an order amending the order of sale made on April 6, so as to embrace the ninety acres of land belonging to Lewis Downey (subject to his mother's dower), which had not been included in the first order made. This was also ordered to be sold at private sale. The administrator had the lands appraised, sixty-three acres of the dower land being appraised at $12.50 per acre, all the remaining lands at about $5 per acre, and thereupon he sold all of it at private sale to himself for the appraised value, $1,855. A deed was made to defendant Downey in pursuance to the "sale," which was approved by the court, and this constitutes the defendant's claim of title to the lands in controversy.

In rebuttal the plaintiff offered to show by Wm. Kyle and James Palmer that at the time the land in controversy was about to be sold by the administrator it was worth at least $40 per acre; that at that time they desired and intended to purchase one hundred acres thereof, and were then willing and able to give at least the sum of $40 per acre therefor; that they expected said lands to be sold at public sale by the administrator, and that they watched for a notice of sale, and that they did not know that said lands had been sold until after it had been sold by the administrator to himself. On defendants' objection the court refused to receive the testimony offered, and plaintiff excepted.

In accordance with said reply the plaintiff then and there in open court offered to enter into an accounting and settlement with the defendants, and to

Vol. 145 mo—17

ascertain what sum, if any, was due from the plaintiff to the defendants, and offered to pay to the defendants whatever money they, or either of them, may have expended for the purchase of the land in controversy, or any part thereof, and taxes, with interest, and all other sums of money which might be found to be due to the defendants, or either of them, by reasons of the purchase of said land, and to pay into court whatever sum of money might be found to be due to the defendants upon a proper accounting, the payment of said money to be a condition precedent to the right of plaintiff to recover the possession of any of the land sued for.    This offer was by the court refused and rejected, and plaintiff excepted.

After said offer was made, the court peremptorily instructed the jury that under the pleadings and evidence the verdict should be for the defendants.    Thereupon the plaintiff took a nonsuit with leave to move to set aside the same.    Motion to set aside the nonsuit was made in due time and overruled, and this case is here upon appeal.

It is urged that the administrator's sale and deed are void because the notice required by the statute to be given to the parties in interest was published only for twenty-four days before the day on which the parties were required to appear and show cause why the order of sale should not be made, when the statute requires twenty-eight days notice.    The probate court had the power to order a sale of the lands belonging to the estate of William H. Downey, deceased, for the payment of debts against the estate by proceeding under section 47, General Statutes 1865, page 500, upon filing a statement of the accounts of the administrator, showing that the personal estate was insufficient to pay the debts against the estate; or by proceeding under section 22, page 498, of the same statute, by the

presentation of a petition showing that the personal property was insufficient to pay the debts (as provided by section 10, page 497, of said statute), accompanied by a true account of his administration, a list of debts due to and by the deceased and remaining unpaid, and an inventory of the real estate and of the remaining personal estate with its appraised value, the whole to be verified by the administrator.

The proceedings for the sale of the land in question in this case were under section 22, *supra*, and when such is the case the statute requires (G. S. 1865, sec. 25, p. 498) that where such petition and accounts, lists and inventories, shall be filed, the court shall order that all persons interested in the estate shall be notified as hereinbefore stated. While the notice was published in a weekly newspaper published in said county it was only published for twenty-four days instead of four weeks before the first day of the court at which the order of sale was made. That is, the first insertion of the notice of the intended application for an order for the sale of the land was on September 8, 1876, while the first day of the next term of the probate court thereafter was on the second day of October.

In *Teverbaugh v. Hawkins*, 82 Mo. 180, it was held that an order of a probate court for the sale of lands belonging to a decedent for the payment of his debts without a petition therefor, and without notice of the intention to apply for the same as required by law, is void, and a sale thereunder will pass no title, except where on a settlement of the accounts of the administrator, it appears the personal estate is insufficient to pay the debts of the estate; in which event the court can make the order of sale of its own motion. In *Hutchinson v. Shelley*, 133 Mo. 400, (as in the case at bar) the order of sale was not made on an annual settlement. None was due and the record showed that it was made

on the petition of the administrator. The court observed: "By section 147, Revised Statutes 1889 (section 25, *supra*), when the petition was filed the law required that notice to the heirs should be given by publication in some newspaper for four weeks or by ten handbills put up in ten public places twenty days before the term of the court at which such an order could be made, and yet the record affirmatively shows upon its face that such notice was not given but the order was made the same day it was filed. Hence it was invalid." Citing *Valle v. Fleming,* 19 Mo. 460; *Agan v. Shannon,* 103 Mo. 661; *Ferguson's Adm'r v. Carson's Adm'r,* 86 Mo. 673.

When defendants showed the order of sale by the probate court of Platte county for the sale of the land in question, the order approving the sale, and the deed from W. P. Chiles *ex officio* clerk of said court to the defendant Downey, the presumption will be indulged therefrom, until the contrary is shown, that all antecedent steps requisite for the sale were taken (*Price v. Springfield Real Estate Association,* 101 Mo. 107), and that the order of sale was made upon proper publication of notice, but when it affirmatively appears to the contrary from said records, as in the case at bar, that it is impossible that the notice could have been given, the order of sale must be held invalid. *Valle v. Fleming,* 19 Mo. 455; *Agan v. Shannon,* 103 Mo. 661.

The statute with respect to the publication of the notice (section 25, *supra*) is mandatory, in that it provides that such notice shall be published for four weeks in some newspaper in the county in which the proceedings are had before the term of the court at which such order will be made. The first publication was on September 8, 1876, while the October term of the probate court began on the second day of that month, so that the length of time from the first publication to the first

·day of court was only twenty-four days, four days less than four weeks. It is perfectly clear therefore that the requisite notice was not given, and the court was without jurisdiction to make the order of sale, and that defendant Downey acquired no title to the land by reason of his purchase and deed. In holding otherwise we think the court committed reversible error.

As this is the vital question involved in this appeal we deem it unnecessary to pass upon other questions raised by plaintiff as they may not arise upon another trial.

For reasons stated we reverse the judgment and remand the cause. GANTT, P. J., and SHERWOOD, J., ·concur.