OLLIE BLATTEL, GUSSIE SLACK WILLIAMS and NOAH ROBERTS v. HENRY STALLINGS, BESSIE STALLINGS, MARCELLUS STALLINGS and ANNA STALLINGS, Appellants.—142 S. W. (2d) 9.

Division One, July 3, 1940.*

*NOTE: Opinion filed at September Term, 1939, May 4, 1940; motion for rehearing filed; motion overruled at May Term, 1940, July 3, 1940.

J. M. *Haw* and *James Haw* for appellants.

452

*J. Grant Frye* for respondents.

WESTHUES, C.—Respondents, plaintiffs below, filed this suit against appellants to set aside deeds through which appellants derived title to one hundred and sixty acres of land in Mississippi county, Missouri. There was a decree for respondents and this appeal followed.

The deeds were canceled on the theory that the property conveyed therein was transferred for the purpose of hindering and defrauding creditors of W. C. Stallings. The parties to the suit are Ollie Blattel, Gussie Slack Williams and Noah Roberts, as plaintiffs, respondents here; Henry Stallings and his wife Bessie, Marcellus Stallings and his wife Anna, defendants, appellants here. Ollie Blattel, Gussie Slack Williams, Henry Stallings and Marcellus Stallings are children of W. C. Stallings, deceased. Noah Roberts, also referred to in the record as

W. N. Roberts, was a creditor of W. C. Stallings. In 1910 W. C. Stallings purchased the land in question for $16,000. Some years later, and prior to 1930, Stallings mortgaged the land to secure a note of $6,000. Also prior to 1930, Stallings became obligated on two notes payable to respondent W. N. Roberts, a note payable to respondent Gussie Slack Williams and another note payable to James A. Stallings, which latter note was transferred to respondent Ollie Blattel. W. C. Stallings made payments on these notes up to and including the year 1930. The deeds canceled by the decree of the trial court were as follows: A deed, dated September 20, 1930, whereby W. C. Stallings and wife conveyed the land in question to Henry Stallings. This deed recited that the land conveyed was all the land owned by the grantor in Mississippi county. Henry Stallings and wife reconveyed the land to W. C. Stallings and wife Sarah Ellen as tenants by the entirety with survivorship. This deed recited that the deeds were executed for the purpose of creating an estate by the entirety in W. C. Stallings and wife. This deed was canceled by the decree of the trial court. On September 19, 1932, W. N. Roberts filed suit in the circuit court seeking a judgment on his note against W. C. Stallings. There was another suit filed on that date against Stallings by one Loebe to collect on a note for $225. Judgments were entered in both cases the following month. Roberts secured a judgment in the sum of $1942.65. After the above suits were filed and before judgments were entered, that is on September 29, 1932, W. C. Stallings and wife conveyed the land in question to appellants in this case. That deed was also canceled by the decree of the trial court. The deed of trust to secure the note of $6,000 remained unsatisfied. W. C. Stallings died on August 9, 1935, and his wife on September 4, 1936. The inventory of the property of the estate of W. C. Stallings showed personal property appraised at $1884. This was insufficient to pay the debts of the estate. Respondent Roberts filed his judgment obtained in the circuit court against the estate of Stallings and it was allowed by the probate court in the sum of $2553.10. Respondent Ollie Blattel filed a claim based on the note purchased from James A. Stallings. This claim was allowed in the sum of $213. Respondent Gussie Slack Williams filed a claim based on her note. It was allowed in the sum of $350. No appeal was taken from the allowance of any of these claims and the record does not show that any exception was filed by anyone interested in the estate. Thereafter the three claimants above named joined in this suit to enforce the payment of their judgments by having the deeds above referred to set aside and the land subjected to the payment of the claims.

Appellants have briefed many points upon which they seek a reversal of the decree of the trial court. They assert that the petition of respondents was insufficient because it failed to state that the respondents had no adequate remedy at law. They also assert that

they were entitled to a trial by jury. A suit of this nature is purely an equitable proceeding, triable as such, and the parties are not entitled to a jury. Respondents in this case are judgment creditors. They alleged that the estate of W. C. Stallings was insufficient to satisfy their claims; that the suit was brought for themselves and other creditors; that the land in question was transferred without consideration for the purpose of defrauding these creditors. A statement that they had no adequate remedy at law was unnecessary. This court so held in Gill v. Newhouse, 178 S. W. 495, 1. c. 499, where it is said:

''We do not think it necessary that the petition should contain those words. It must allege facts from which the court can draw the conclusion that there is no adequate remedy at law. It is the facts, and not the conclusion, which must be alleged.''

We deem the petition sufficient.

Laches was pleaded as a defense because respondents did not enforce their claim during the life of W. C. Stallings. Roberts did have an execution issued, and the land was advertised for sale. Appellants threatened to file an injunction suit to stop the sale. Thereupon Roberts recalled the execution. This was during the life of W. C. Stallings. Why the execution was recalled was left to speculation. Perhaps Roberts was not financially able to handle the transaction. The evidence, however, disclosed that there was no property visible to satisfy the judgment and execution, except the farm here in question. One of the deeds expressly recited that the land conveyed was all the land owned by Stallings. Appellants were in possession of the land, receiving the rents and profits therefrom, and were therefore not injured but benefited by the delay. They are in no position to complain.

A number of assignments of error were based upon the admission of evidence of various witnesses tending to prove that the deceased Stallings and appellants made statements that the title to the land was transferred to avoid the payment of the Roberts note. This being an equitable proceeding it is here for trial de novo. We have reached the conclusion that if all the questioned evidence were disregarded, respondents would still be entitled to a decree. Appellants did not pay for the land conveyed to them. They so testified. Note the evidence of Mrs. Bessie Stallings, wife of Henry Stallings:

''When the land was deeded over to the defendants, that left Mr. and Mrs. Stallings without any property except household goods, a few chickens and a cow. We didn't pay any money to them for the conveyances in 1932, and we didn't in the deed assume and agree to pay off the $6,000 deed of trust. My husband's name is Henry.''

Henry Stallings testified as follows:

''When they deeded the land to us, that left them with no property except some personal property. At the date of those deeds, no money changed hands. Both before and after the execution of the deed

at different times we gave them money. The purpose wasn't mentioned. I guess it is right that the deeds were given without montary consideration.''

When a debtor transfers all his property without receiving a consideration therefor the transfer is considered in law as being in fraud of creditors and void as to them. [George v. Surkamp, 336 Mo. 1, 76 S. W. (2d) 368, l. c. 370 (1-6); 27 C. J. 550, sec. 249, and cases there cited from numerous jurisdictions.] When the deeds were executed in 1930, creating an estate by the entirety, W. C. Stallings was making payments on the notes held by the respondents in this case. When the deed was executed in 1932, he had been sued by two of his creditors. The transfers referred to stripped him of all property which could be reached by execution. These conveyances were made admittedly without consideration and were therefore void as to creditors.

Appellants, however, insist that the value of. the land did not exceed the debt against it and the value of the homestead which was exempt from execution. It is conceded to be the rule that the conveyance of a homestead, even without consideration, is not a fraud upon existing creditors. Creditors are not hurt by such a transfer because nothing is transferred which can be subjected to the payment of their claims. The evidence in this case, however, justifies a finding that the market value of this land was far in excess of the amount of the note and deed of trust and the value of the homestead. All parties conceded that the land was very productive and fertile. In 1910 the debtor paid $16,000 for this farm. One of the appellants testified it could have been sold during what he called the high times for $35,000 or more. One of the Stallings testified that about 1931 he offered $10,000 for the place, and the husband of one of the respondents said he offered $12,000. Appellants contend that the evidence as to these offers was rooted in perjudice and was not the truth. But even if this evidence be disregarded, there is substantial evidence in the record that the farm was easily worth $10,000 at the time the deeds in question were executed. The contrary evidence consisted almost entirely of instances where land in that neighborhood had been sold under foreclosure proceedings. In a number of these it was shown that the owner later redeemed his property. The trial court, by rendering a decree for respondents, must have found that the value of the property exceeded the amount of the deed of trust and the homestead. This finding was amply supported by the record.

Appellants further assert that the probate court had no power or jurisdiction to allow the claims of respondents, Williams and Blattel, because of lack of notices on the administrator. Sections 186, 187, 196 and 193, R. S. Mo. 1929, Mo. Stat. Ann., pages 115, 117, 130 and 127, are cited as authority. The record shows that these claims

were filed in the probate court on July 2, 1936. That file mark showed that a large "X" had been drawn through it, and below the following words appear: "Refiled September 5, 1936, B. B. Guthrie, Judge of Probate." The demands contained a copy of the notes and also an affidavit of the claimants, as required by section 193, R. S. Mo. 1929, Mo. Stat. Ann., page 127. The administrator waived notice in writing, as authorized by section 197, R. S. Mo. 1929, Mo. Stat Ann., page 130, but reserved the right to contest the claims. The record failed to disclose what proof the probate court heard in support of the judgments renderer. The only irregularity on the face of the record appeared in the certificate of the allowance which bore a date as of July—, 1936. The certificate, however, followed the refiling of the claims. The only objection made at the time the proof was offered in the trial court was, that the claims showed on their face that no service had been had on the administrator and the waiver of service ante-dated the certificate of allowance. The trial court overruled the objection. It must have appeared to the trial court that the discrepancy in the dates was a mere clerical error and did not invalidate the judgments of the probate court. No contention was made that the claims were not legitimate. Respondent Roberts introduced in evidence the demand filed in the probate court, which demand was based on a judgment as above indicated. It showed the date of the judgment and the book and page where recorded, also an affidavit as required by section 193, supra. This demand was filed on May 9, 1936. The certificate of allowance was dated May 19, 1936. The objection made to the introduction of the above evidence was that the claim was based on a matter of record and that no certified copy of the record was filed with the claim. Section 189, R. S. Mo. 1929, Mo. Stat. Ann., page 121, reads that the claimant shall exhibit a copy of the judgment rendered in the lifetime of the deceased to the probate court. There is no showing that this was not done. It must be remembered that the purpose of this lawsuit is not to establish demands against the estate of W. C. Stallings. That was done in the probate court prior to the filing of this suit. The judgments in the probate court were not questioned either by an appeal, or by exception or objections of anyone interested. Judgments of a probate court are presumed to be regular until the contrary is affirmatively shown, and the burden of so showing rests upon the party asserting the invalidity. Again such judgments are not subject to collateral attack. [34 C. J. 518, sec. 824.] In Jones v. Peterson, 335 Mo. 242, 72 S. W. (2d) 76, l. c. 84, 85 (11-14), this court said:

"As probate courts are established by organic law, the Constitution of Missouri, their judgments are entitled to the same credit and presumptions accorded to courts of general jurisdiction. [Robbins v. Boulware, 190 Mo. 33, l. c. 43, 88 S. W. 674, 109 Am St Rep. 746.]"

We have disposed of all points briefed. From the evidence adduced the decree was manifestly for the right party. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.

PER CURIAM:—In appellants' motion for rehearing our attention has been directed to the fact that the judgment which we affirmed provided for a sale of the land subject only to a deed of trust of $6,000 in favor of the Metropolitan Life Insurance Company and not subject to the homestead. Appellants claim that they are entitled in any event to the homestead rights existing in the property as held by their grantors. The question was preserved for review. It was not referred to in the opinion. Appellants are correct in their contention. [See Farmers' Bank v. Handly, 320 Mo. 754, 9 S. W. (2d) 880, l. c. 896 (15); Brennecke v. Riemann, 102 S. W. (2d) 874, l. c. 877 (5, 6).]

Our opinion is therefore modified, and the trial court is hereby directed to modify its judgment so as to provide, in case of a sale of the land, that it be sold subject to the homestead as well as the deed of trust mentioned in the judgment of the trial court.